**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| NANCY RONCATI DOWDEN,<br>*Plaintiff*,<br><br>v.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSETS TRUST 2007-1 MORTGAGE-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-1; MCCARTER & ENGLISH LLP; HINSHAW & CULBERTSON LLP; BROCK & SCOTT, PLLC; ADAM M. SWANSON; BHANUKA Y. MAHABAMUNUGE; GEOFFREY K. MILNE; AARON A. FREDERICKS; JEFFREY MARKS KNICKERBOCKER; CHRISTOPHER BROWN; BROWN LAW LLC; CONNECTICUT JUDICIAL BRANCH; THE HONORABLE JOHN REGAN, in his official capacity for prospective declaratory and injunctive relief; PETER D. KEANE, in his official capacity as ADA case-management official for the Connecticut Appellate and Supreme Court system, as applicable; JOHN DOES 1–20,<br>*Defendants*. | ) | 3:26-CV-01038 (SVN)<br><br><br><br><br><br>November 9, 2026 |

## RULING ON MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Sarala V. Nagala, United States District Judge.

Plaintiff Nancy Roncati Dowden is an octogenarian homeowner whose home in Easton, Connecticut is in the process of being foreclosed upon by Defendant Deutsche Bank National Trust Company, as Trustee for American Home Mortgage Assets Trust 2007-1 Mortgage-Backed Pass-

Through Certificates Series 2007-1 ("Deutsche Bank"). *See Deutsche Bank Nat'l Trust Co., as Trustee for Am. Home Mortg. Assets Trust 2007-1 Mortg.-Backed Pass-Through Certificates Series 2007-1 v. Nancy Roncati Dowden,* No. FBT-CV-23-6120421-S (Conn. Supp. Ct.) ("Foreclosure Action"). In the Foreclosure Action, the Connecticut Superior Court granted summary judgment to Deutsche Bank on liability only on December 1, 2025, after Plaintiff failed to respond to Deutsche Bank's motion. *See* Foreclosure Action, Dkt. Nos. 157.00, 157.10. Plaintiff now brings suit against a host of Defendants[1] who were involved in the Foreclosure Action, including Deutsche Bank itself, attorneys and law firms who represented both Deutsche Bank and Plaintiff in that action, the Connecticut Superior Court judge who granted Deutsche Bank's summary judgment motion, and the Connecticut Appellate Court's disability case management official. One of Plaintiff's key claims is that she is disabled and that the Connecticut Superior Court failed to accommodate her disability, resulting her being deprived of the ability to fully litigate her case.

The 292-page complaint consists of thirty-two claims, including violations of Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act against the Connecticut Judicial Branch; denial of procedural due process and access to courts against Judges Regan and Defendant Keane; and various federal and state law claims against Deutsche Bank and the law firm and attorney Defendants, as described in Appendix A to this ruling.

[1] The Defendants are: Deutsche Bank; three law firms that represented or currently represent Deutsche Bank in the Foreclosure Action, McCarter & English LLP, Hinshaw & Culbertson LLP; and Brock & Scott, PLLC; attorneys at those firms, Adam M. Swanson; Bhanuka Y. Mahabamunuge, Geoffrey K. Milne, Aaron A. Fredericks, and Jeffrey Marks Knickerbocker; Plaintiff's former attorneys in the Foreclosure Action, Christopher Brown and Brown Law LLC; the Connecticut Judicial Branch; Judge John Regan (in official capacity), who granted Deutsche Bank's summary judgment motion; Peter D. Keane, in his official capacity as ADA case-management official for the Connecticut Appellate and Supreme Court system; and John Does 1 to 20. For ease of reference, the Court refers to Attorneys Swanson, Mahabamunuge, Milne, Fredericks, Knickerbocker, and Brown as the "Attorney Defendants"; to Defendants McCarter & English, Hinshaw & Culbertson, Brock & Scott, and Brown Law LLC as the "Law Firm Defendants." It also refers to the Connecticut Judicial Branch, Judge Regan, and Defendant Keane as the "State Judicial Defendants." The Court also groups attorneys and the law firms for which they work where referenced below.

Plaintiff has moved for a temporary restraining order ("TRO") and a preliminary injunction ("PI"). Mot. for TRO and PI, ECF No. 5. Plaintiff's motion requests numerous kinds of relief from the Court, including: preventing Defendants for enforcing any state court order or judgment before the federal court adjudicates Plaintiff's claims; preventing Defendants from "taking any step" that would "give irreversible effect to the challenged 'unopposed' liability posture" created after Plaintiff's ADA rights were violated; preventing Defendants from arguing or relying on Plaintiff's "disability-related inability to participate in live, real-time, oral, adversarial, or cognitively demanding proceedings" as waiver of defenses while Plaintiff's federal claims are proceeding; preventing the use of the state court record to assert any preclusion doctrines; directing Defendants to preserve relevant communications; handling all federal proceedings without requiring Plaintiff to participate in "live adversarial oral participation"; and directing that Plaintiff's medical records not be publicly disclosed. ECF No. 5 at 10–12; ECF No. 5-1 at 4–7. Since filing the motion for the TRO and PI on June 29, 2026, Plaintiff has filed two motions to expedite the Court's consideration of the TRO and PI request. Mots. to Expedite, ECF Nos. 105, 121.[2]

For the reasons discussed below, Plaintiff's motion for a TRO and a PI is DENIED, and her motions to expedite a ruling are DENIED as moot.[3]

---

[2] Plaintiff has also filed a notice of appeal of this Court's "constructive denial and practical refusal of preliminary injunctive relief." Not. of Interlocutory Appeal, ECF No. 130. Although the filing of a notice of appeal would ordinarily divest this Court of jurisdiction over matters involved in the appeal, *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982), a "plainly unauthorized notice of appeal" does not do so. *See United States v. Rodgers*, 101 F.3d 247, 252 (2d Cir. 1996); *Leonhard v. United States*, 633 F.2d 599, 610 (2d Cir. 1980). As the Court is aware of no basis on which Plaintiff may appeal the "constructive denial" of a motion for preliminary injunctive relief—and Plaintiff cites none—her notice of interlocutory appeal is plainly unauthorized, and does not divest this Court of jurisdiction over the present motion.

[3] All defendants have moved to dismiss the complaint. Mots. to Dismiss, ECF Nos. 58 (Brock & Scott; Knickerbocker), 111 (State Judicial Defendants), 117 (McCarter & English and its attorneys); 125 (Hinshaw & Culbertson and its attorneys); 128 (Brown Law LLC and its attorneys). Defendant Deutsche Bank has moved to strike the entire complaint. Mot. to Strike, ECF No. 114. The Court will address these motions in due course.

## I. FACTUAL BACKGROUND

### A. The Foreclosure Action

To recount the history of the Foreclosure Action, the Court relies on filings therein, of which it properly takes judicial notice. *See Karabas v. TC Heartland LLC*, 770 F. Supp. 3d 454, 463–64 (E.D.N.Y. 2025).

Plaintiff is a homeowner in her late eighties; she suffers from long-COVID-related impairment, cognitive limitations, visual and auditory limitations, and medical fragility. Compl., ECF No. 1 ¶ 2.[4]

On December 27, 2022, Deutsche Bank, as Trustee for American Home Mortgage Assets Trust 2007-1 Mortgage-Backed Pass-Through Certificates, Series 2007-1, brought suit in Connecticut Superior Court against Plaintiff to begin foreclosure proceedings on her Easton, Connecticut home, where she has lived for more than twenty years. Foreclosure Action Docket, ECF No. 5-3 at 75; ECF No. 1 ¶¶ 160, 421.

Until November of 2025, Plaintiff was represented in the Foreclosure Action by Attorney Christopher Brown of Brown Law LLC. During the proceedings in Connecticut Superior Court, Plaintiff submitted medical documentation and sought ADA accommodation six times between June 17, 2025, and August 10, 2026. *Id.* ¶ 20; Foreclosure Action, Dkt. Nos. 146.00, 165.00, 165.01, 200.00, 203.00, and 221.00.

On September 9, 2025, Deutsche Bank moved for summary judgment for the second time since the Action's pendency, with the state court's permission. Foreclosure Action, Dkt. Nos. 132.00, 132.10, 157.00. On October 23, 2025, the day before her opposition to the motion was

---

[4] Plaintiff's complaint restarts the numbering of paragraphs on page 269, in her prayer for relief. The Court's citation to paragraphs refers only to those to the earlier portions of the complaint. For citations to the latter section of the complaint, where the numbering repeats, the Court employs page numbers.

due, Plaintiff sought an extension of time to oppose Deutsche Bank's summary judgment motion "because the mental engagement necessary for her to provide an opposition affidavit remain[ed] impaired." *Id.,* Dkt. No. 161.00. Plaintiff sought an indefinite extension pending her next physician evaluation, which had yet to be scheduled at the time. *Id.* Deutsche Bank opposed on the grounds that Plaintiff had recently executed two affidavits in an unrelated matter pending in Superior Court in New Jersey, which Deutsche Bank believed undercut Plaintiff's representation that she could not execute an affidavit to oppose its summary judgment motion. *Id.,* Dkt. No. 162.00. After a status conference on November 7, 2025, the presiding judge, Judge John Regan, ordered the clerk to schedule the summary judgment motion for a hearing and ordered that the deposition of Plaintiff could go forward. *Id.*, Dkt. No. 163.00.

The hearing was scheduled for November 17, 2025. Before the hearing took place, on November 12, 2025, Attorney Brown moved to withdraw as Plaintiff's counsel because he had "come to reasonably believe that [Plaintiff] has not been truthful with the court." *Id.* Dkt. No. 164.00. That same day, Plaintiff filed *pro se* ADA requests for accommodation. *See id.*, Dkt. Nos. 165.00, 165.01. On November 14, 2025, Judge Regan held as follows: "The Court at this time will not be entering a stay of proceedings of all scheduled events in this matter. The Court needs the Defendant to provide any and all medical records and medical appointments that can further guide the Court's decision on the ADA request. The Court will review this request again once the aforementioned items are submitted to the Court and a caseflow request is then submitted for the Court to again review this ADA request." *Id.*, Dkt. No. 165.10. Plaintiff filed a motion to submit her medical records under seal the same day, *id.*, Dkt. No. 170.00.

On November 17, 2025, Attorney Brown filed an opposition to Deutsche Bank's summary judgment motion on behalf of Plaintiff, which Plaintiff moved to withdraw in a *pro se* capacity.

*Id.*, Dkt. Nos. 171.00, 172.00. Plaintiff, again proceeding *pro se*, also filed a motion requesting a sixty-day stay of proceedings due to the imminent withdrawal of her counsel and her "documented medical disability." *Id.*, Dkt. No. 173.00.

Judge Regan held a virtual hearing on November 17, 2025, on Deutsche Bank's motion for summary judgment. *Id.*, Dkt. No. 179.00; Pl.'s Ex. 6, Nov. 17, 2025 Tr., ECF No. 5-3 at 54–66. During the November 17, 2025, hearing, Plaintiff, who appeared without counsel, requested a sixty-day stay of the proceedings to "regroup" from the recent departure of her counsel, and because of her ongoing medical issues. ECF No. 5-3 at 63. Judge Regan stated that he had reviewed the filings in the New Jersey Action, allowed Deutsche Bank two weeks to file a supplemental affidavit regarding possession of the note, and implicitly denied Plaintiff's request for a stay, stating that he would "rule in two weeks, or sooner if Attorney Milne files his supplemental documents earlier, okay." *Id.* at 65. Ultimately, on December 1, 2025, Judge Regan granted Deutsche Bank's motion as to liability only. Foreclosure Action, Dkt. No. 157.10. He also denied Plaintiff's November 17, 2025, written motion for a sixty-day stay on December 3, 2025, *id.*, Dkt. No. 173.10, and granted Attorney Brown's motion to withdraw on December 8, 2025, *id.* Dkt. No. 178.00.

After losing at summary judgment on liability, Plaintiff appealed in state court. *See Deutsche Bank Nat'l Trust Co., as Trustee v. Nancy Roncati Dowden*, AC 49777 (Conn. App). The Connecticut Appellate Court dismissed Plaintiff's appeal on April 30, 2026, for lack of appellate jurisdiction. *See* Appellate Ct. Decision, Pl.'s Ex. 9, ECF No. 5-3 at 151. Plaintiff petitioned for certification to appeal to the Connecticut Supreme Court, but that petition was denied. *See Deutsche Bank Nat'l Trust Co., Trustee v. Nancy Roncati Dowden*, 354 Conn. 953 (2026).

The Foreclosure Action remains active in Superior Court. In recent filings, Plaintiff has stated that Deutsche Bank "has obtained a fixed November 9, 2026, adjudicative setting for strict foreclosure." Pl.'s Mot. to Expedite, ECF No. 121 at 1. Based on the Foreclosure Action docket, the case is set for Short Calendar on November 9, 2026.

B. Allegations of the Present Complaint

This case involves fourteen named Defendants and thirty-two alleged counts, but the central facts are relatively straightforward. Plaintiff's house was being foreclosed upon, and she claims that her disability made it impossible for her to defend herself fully during that state case, causing her to lose in state court. She now brings suit against a number of those individuals and entities connected with the matter. The Court observes that Plaintiff's complaint is extremely long and often uses repetitive and convoluted language. Because of the sprawling nature of the complaint, the Court makes an effort to summarize and condense her allegations here.

In the present action, Plaintiff contends the Deutsche Bank was "not pursuing a simple default on a conventional mortgage" in the Foreclosure Action; rather, in Plaintiff's view, Deutsche Bank was "enforcing a toxic securitized mortgage instrument embedded in a predatory refinance chain." ECF No. 1 ¶ 4. Plaintiff highlights that she held her mortgage for more than fifteen years and paid more than the principal, so she contends that the mortgage Deutsche Bank sought to enforce in the Foreclosure Action was not an ordinary default, but rather a "predatory equity-stripping instrument." *Id.* Plaintiff contends that the fact that Deutsche Bank employed three law firms to prosecute the foreclosure "confirms that this was not a routine residential default." *Id.* ¶ 15.

Plaintiff details a series of events through which she alleges that the "mortgage chain" was "infected from inception by predatory lending, fraudulent inducement, lender-side misconduct, broker steering, and concealed material facts." *Id.* ¶¶ 163–206. The Court does not recount those

allegations in full here as they are not germane to the present motion; suffice it to say that Plaintiff believes Deutsche Bank knew of the defects in enforceability of the mortgage and nonetheless chose to enforce it. *Id.* The defective mortgage, she alleges, was enforced through "false, incomplete, or untested documents." *Id.* ¶ 18.

Plaintiff alleges that Deutsche Bank, through its counsel, Defendants Adam M. Swanson and Bhanuka Y. Mahabamunuge of McCarter & English LLP and Geoffrey K. Milne and Aaron A. Fredericks of Hinshaw & Culbertson LLP, opposed her requests for disability-based accommodations and disputed the extent of her disability. *Id.* ¶ 21. Plaintiff claims that this "accusation was false, misleading, and materially inverted the record." *Id.* ¶¶ 19, 21. Plaintiff refers to these legal filings as a "public-docket attack" which caused "reputational, dignitary, medical, litigation, and access injury." *Id.* ¶ 22. Plaintiff also brings claims against Jeffrey Marks Knickerbocker, an attorney with Brock & Scott, PLLC, whom she claims "appeared in connection with the foreclosure action" and represented that his office held physical possession of the original note. *Id.* ¶ 126. On the basis of these allegations, Plaintiff also sues these attorneys' law firms, Brock & Scott, PLLC; McCarter & English LLP; and Hinshaw & Culbertson LLP.

Beyond suing the lawyers and firms connected with Deutsche Bank, Plaintiff also brings suit against her own former counsel Christopher Brown, and his firm, Brown Law LLC. As detailed above, Attorney Brown moved to withdraw as Plaintiff's counsel days before the critical summary judgment hearing, telling the Court that Plaintiff had been untruthful to the Court in her representations of her disability. *Id.* ¶¶ 25–26. Brown had filed a brief opposing Deutsche Bank's summary judgment motion on Plaintiff's behalf, but Plaintiff later moved to withdraw it (*pro se*) as filed without her authorization, as Brown had omitted a defense Plaintiff had specifically directed him to raise. *Id.* ¶ 27. Once that opposition brief was withdrawn, there was no operative

opposition to Deutsche Bank's summary judgment motion on the record. *Id.* Brown's withdrawal as counsel and "abandonment of Plaintiff's defenses," Plaintiff alleges, is what allowed Deutsche Bank to obtain summary judgment after the November 17, 2025, hearing. *Id.* ¶¶ 28, 133. Plaintiff alleges that because she was not given an "ADA-compliant opportunity" to test Deutsche Bank's evidence, she could not adequately challenge the bank's narrative and validity of the mortgage. *See e.g., id.* ¶¶ 31–32, 70, 288, 440.

Plaintiff also sues Judge Regan in his official capacity, for prospective declaratory and injunctive relief. *Id.* ¶ 139. She accuses him of "functionally silencing" her by allowing Deutsche Bank to argue orally during the summary judgment hearing while her disability[5] prevented her from doing the same, and because he entered "contradictory summary-judgment relief." *Id.* ¶ 141. Plaintiff also faults Judge Regan for not granting her an "ADA stay and mandatory accommodation for written proceedings" on February 25, 2025, long before the summary judgment proceedings. *Id.* ¶ 35. From Judge Regan, Plaintiff seeks relief "preventing ongoing use of the Challenged Liability Posture and requiring meaningful ADA-compliant access before any strict-foreclosure consequences are imposed." *Id.* ¶ 142. Plaintiff similarly has sued the Connecticut Judicial Branch itself, accusing it of failing to provide effective ADA accommodations, "allowing private ADA communications to be publicly docketed without authorization," and permitting "inaccessible hearings and asymmetrical proceedings to continue," preventing her from being heard before she lost the summary judgment. *Id.* ¶ 137.

---

[5] Plaintiff explains the nature of her disability as "documented cognitive, visual, auditory, and medical impairments, including long-COVID-related impairment and medical fragility, that substantially limit major life activities and materially affect her ability to participate in live, adversarial, high cognitive-load legal proceedings." ECF No. 1 ¶ 100. She states that this does not affect her ability to "direct her litigation . . ., or present sophisticated written arguments when given medically safe access." *Id.* ¶ 101. A key accommodation she sought was not to take part in "live adversarial proceedings." *Id.* ¶ 102.

Finally, Plaintiff sues Peter D. Keane, ADA coordinator for the Connecticut Appellate Court and Plaintiff's appellate case manager, in his official capacity. *Id.* ¶¶ 145, 148. Plaintiff accuses Keane of making a communication about her disability public, "thereby exposing disability-access communications to adverse parties and the public and chilling Plaintiff's ability to seek further accommodations." *Id.* ¶ 147. From Keane, Plaintiff seeks "prospective, declaratory, sealing, correction, and access-related relief arising from appellate/Supreme Court ADA processing and public-docket practices." *Id.* ¶ 148.[6]

## II. LEGAL STANDARD

Both temporary restraining orders and preliminary injunctions are exercises of the Court's equitable powers. "The Second Circuit applies similar standards for temporary restraining orders and preliminary injunctions, 'and district courts have assumed them to be the same.'" *Smalls v. Wright*, No. 3:16-CV-2089 (JCH), 2017 WL 2200909 , at *1 (D. Conn. May 19, 2017) (citation omitted); 11A Fed. Prac. & Proc. Civ. ¶ 2952 (3d ed.) ("District courts generally apply the same standard to a temporary restraining order as that applicable to a preliminary injunction.").

These standards are exacting. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The Court must "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* (citation omitted). Generally, a party seeking either form of injunctive relief must establish that: (1) that there is either (a) a likelihood of success

[6] In addition to the named defendants, Plaintiff also brings suit against twenty John Does, who are "persons or entities whose identities are not yet fully known" who allegedly assisted or benefited from the conduct described in the complaint. *Id.* ¶ 149. Plaintiff is vague on what these John Does are alleged to have done or who they are, but states they "may include servicers, trustees, document custodians, foreclosure processors, law-firm personnel, Judicial Branch personnel, docketing personnel, ADA-processing personnel, and other actors involved in the mortgage chain, foreclosure enforcement, disability-access denial, public docketing of private ADA communications, post-hearing evidentiary patching, or concealment of material facts." *Id.* ¶ 150.

on the merits or (b) a sufficiently serious question as to the merits of the case to make it a fair ground for litigation and a balance of hardships tipping decidedly in the party's favor; (2) the party will likely experience irreparable harm in the absence of injunctive relief; (3) that the balance of hardships tips in the party's favor; and (4) that the public interest would not be disserved by issuance of the injunction. *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015).

Whether to grant such relief "rests in the sound discretion of the district court." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990). An evidentiary hearing is not required "when the relevant facts either are not in dispute or have been clearly demonstrated at prior stages of the case," or "when the disputed facts are amenable to complete resolution on a paper record." *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998).[7]

## III. DISCUSSION

Plaintiff moves for a TRO and a PI. For the reasons explained below, the Court declines to grant either of these requests. The Court also denies Plaintiff's motions to expedite a ruling on her motion as moot.

Plaintiff requests Defendants and their agents be restrained from relying on or enforcing "the exclusion-produced liability posture." ECF No. 5 at 5. This request is, at least in part, a request to stop the enforcement of the state court order granting Deutsche Bank summary judgment on liability, and Plaintiff makes clear she seeks to stop Defendants from "obtaining. . . enforcing . . . or otherwise using any state-court order, [or] judgment." *Id.* at 10. At bottom, Plaintiff seeks to avoid foreclosure of her property, despite the state court's summary judgment on liability. ECF

[7] As Plaintiff has specifically requested that she not be required to participate in live oral proceedings due to her disability, the Court does not perceive her motion as requesting an evidentiary hearing—which would, of course, be a live, oral proceeding.

No. 1 at 269 (requesting a "preliminary and permanent injunction barring Defendants from using the inaccessible, ADA-tainted, fraud-tainted, and non-adversarial state-court liability posture challenged herein as a predicate for strict foreclosure, title transfer, possession, debt calculation, preclusion, adverse inference, or any further enforcement consequence . . .").

In opposition to Plaintiff's motion, Defendants raise various doctrines that would preclude the preliminary relief Plaintiff seeks, including the *Rooker-Feldman* doctrine, the *Younger* and *O'Shea* abstention doctrines, and the Anti-Injunction Act, and additionally argue that Plaintiff fails to meet the high standard for preliminary injunctive relief. For the following reasons, the Court agrees with Defendants that application of these threshold doctrines suggests Plaintiff is unlikely to prevail on the merits of her claims, and likewise that the other TRO/PI factors counsel in favor of denying Plaintiff's motion.

A. Likelihood of Success on the Merits

First, the Court concludes that Plaintiff has not demonstrated a likelihood of success on the merits of the claims that relate to her request for preliminary injunctive relief, as they are barred by several threshold doctrines. *See Augustin v. Digirolamo*, No. 25-CV-03332 (NCM)(TAM), 2025 WL 1744345, at *2 (E.D.N.Y. June 24, 2025) (citing the likelihood of *Younger* abstention as a key factor in determining the plaintiff had little likelihood of success on the merits). Plaintiff is seeking a mandatory injunction, rather than a prohibitory one, as she seeks to "command[] some positive act"—namely, a restriction on Defendants enforcing the Superior Court's summary judgment ruling—rather than to maintain the *status quo* pending trial. *See N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 36–37 (2d Cir. 2018). Thus, she must make a "clear showing" that she is entitled to the relief requested, which requires demonstration of a "greater likelihood of success." *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (citation omitted). Plaintiff fails to sustain this burden.

*1. Rooker-Feldman Doctrine*

First, the Court concludes that, insofar as Plaintiff seeks to challenge the Superior Court's denial of her motions to stay the Foreclosure Action and its summary judgment ruling, her claims are barred by the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine is derived from two U.S. Supreme Court cases, *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923) and *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Under the *Rooker-Feldman* doctrine, federal courts lack jurisdiction over cases that essentially amount to appeals of state court judgments. *T.M. v. Univ. of Maryland Med. Sys. Corp.*, 608 U.S. 668, 677–78 (2026); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005). The doctrine is rooted in the principle that the jurisdiction to review a state court judgment is exclusively within the authority of the United States Supreme Court. *Exxon Mobile Corp.*, 544 U.S. at 283; 28 U.S.C. § 1257.

For the *Rooker-Feldman* doctrine to apply, four elements must be met: "(1) the federal court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." *Hoblock v. Albany Ctny. Bd. of Elecs.*, 422 F.3d 77, 85 (2d Cir. 2005), *abrogated on other grounds by T.M.*, 608 U.S. 668.[8] The *Rooker-Feldman* doctrine applies not only to final orders, but also to interlocutory decisions of the state court. *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (noting that the "doctrine applied both to final state court judgments and to interlocutory state court orders"); *Gentner v. Shulman*,

[8] In *T.M.*, the Supreme Court overruled the Second Circuit's previously-held view that *Rooker-Feldman* could not apply unless state appellate proceedings had ended. *See Hunter v. McMahon*, 75 F.4th 62, 65 (2d Cir. 2023), *abrogated by T.M.*, 608 U.S. 668.

55 F.3d 87, 89 (2d Cir. 1995) ("federal district courts lack jurisdiction to review state court decisions whether final or interlocutory in nature").

"In the particular context of state court judgments of foreclosure, 'Courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker–Feldman* doctrine.'" *Gonzalez v. Ocwen Home Loan Servicing*, 74 F. Supp. 3d 504, 514 (D. Conn. 2015), *aff'd sub nom. Gonzalez v. Deutsche Bank Nat. Tr. Co.*, 632 F. App'x 32 (2d Cir. 2016) (unpublished) (citation omitted); *Flash v. Connecticut*, No. 3:24-CV-01965 (VAB), 2025 WL 2636618, at *6 (D. Conn. Sept. 12, 2025), *appeal dismissed* (Jan. 27, 2026). The Second Circuit has explained that the doctrine is invoked with "some frequency to cases . . . in which error by state-court judges in state-court proceedings is asserted, frequently in the foreclosure process." *Sung Cho v. City of New York*, 910 F.3d 639, 645 (2d Cir. 2018); *see Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) (holding that fraud claims asserted against a mortgage lender and Deutsche Bank challenging those parties' standing to seek foreclosure in a state court suit were barred by *Rooker-Feldman*, since the federal court was being asked to "review the state proceedings and determine that the foreclosure judgment was issued in error"); *Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 21 (2d Cir. 2016) (summary order) ("[plaintiff's] argument that the judgment was void because it was obtained through a fraudulent scheme to interfere with the judicial process does not defeat application of *Rooker–Feldman*").

At a minimum, Plaintiff's claims for injunctive relief against the Connecticut Judicial Branch and Judge Regan implicate the *Rooker-Feldman* doctrine. First, Plaintiff lost in state court, and the state court's decision was rendered before she brought suit in federal court. She also plainly complains of injuries caused by Judge Regan's denial of her motions to stay the Foreclosure Action and his ultimate ruling on summary judgment, and invites this Court to find, among other

things, that the Connecticut Judicial Branch and Judge Regan violated her rights under the ADA, the Rehabilitation Act, and the First and Fourteenth Amendments to the U.S. Constitution in deciding summary judgment against her. She is thus directly inviting rejection of the state court rulings. Plaintiff's claims against the Connecticut Judicial Branch and Judge Regan fit "the paradigm situation in which *Rooker-Feldman* precludes a federal district court from proceeding: She does not like the result reached in state court and repaired to federal court to undo the state judgment in her favor." *T. M.*, 608 U.S. at 679 (cleaned up; citation omitted). That Plaintiff claims the Superior Court's error lies in failing to accommodate her disability does not change that the ultimate relief she seeks is undoing any "strict-foreclosure consequence" of the state court's rulings and restoring any lost title to her property. *See* ECF No. 1 at 269–70.

The Court rejects Plaintiff's arguments that *Rooker-Feldman* does not apply here. First, although Plaintiff contends that the doctrine is inapplicable because "no judgment of strict foreclosure . . . or final foreclosure enforcement consequence had been completed," *id.* ¶ 82, *Rooker-Feldman* applies to interlocutory state court orders, in addition to final orders, as explained above. Second, although Plaintiff claims that her injuries arise from "independent misconduct including ongoing ADA interference [and] disability-based exclusion," her request for injunctive relief specifically seeks to halt enforcement of Judge Regan's rulings. While *Rooker-Feldman* would not bar any claims for injuries that do not result from the state court's rulings, *see Vossbrinck*, 773 F.3d at 427, it does bar those claims that invite review and rejection of those rulings (including, at a minimum, the ADA, Rehabilitation Act, and First and Fourteenth Amendment claims against the Connecticut Judicial Branch and Judge Regan). Finally, although Plaintiff claims that "no state court has provided a full, fair, ADA-compliant, adversarial adjudication of the federal access, interference, and due-process claims pleaded in this Federal

Complaint," ECF No. 1 ¶ 82, this is irrelevant for application of *Rooker-Feldman*. A federal court *cannot* overturn a state court judgment, even if it is unfair; only state appeals courts and the Supreme Court of the United States can do that. Plaintiff can pursue her arguments in a state court appeal of any final judgment issued by the Superior Court.

Thus, the Court concludes that it thus lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine over Plaintiff's ADA, Rehabilitation Act, access to courts and procedural due process claims against the Connecticut Judicial Branch and Judge Regan, at a minimum, and Plaintiff cannot demonstrate a likelihood of success on the merits of these claims if the Court lacks subject matter jurisdiction to adjudicate them.

McCarter & English and its attorneys also claim protection under the Rooker-Feldman doctrine. But that doctrine must be evaluated on a claim-by-claim basis, see *Thayer v. Vt. Dep't of Children and Families*, No. 24-285-cv, 2025 WL314787, at *2 (2d Cir. Jan. 28, 2025) (summary order), and the McCarter Defendants have not evaluated each of Plaintiff's claims against them to determine if each is individually barred by the doctrine. Thus, the Court declines to deny Plaintiff's motion for preliminary injunctive relief on Rooker-Feldman grounds as to the McCarter Defendants (but grants it on other grounds).

*2. Younger* Abstention

The Court also concludes that it must likely abstain from granting Plaintiff's requested relief under the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971), and thus Plaintiff has not demonstrated a likelihood of success on the merits of her claims for this reason, as well.

*Younger* and its progeny provide that "federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings." *Spargo v. New York State Comm'n on Jud. Conduct*, 351 F.3d 65, 74 (2d Cir. 2003). Under this doctrine, "federal courts

should refrain from interfering with core state court civil administrative processes, powers, and functions that allow the state courts to adjudicate the matters before them and enforce their judgments." *Cavanaugh v. Geballe*, 28 F.4th 428, 434 (2d Cir. 2022). While *Younger* is not a jurisdictional bar based on Article III requirements, it is a "threshold ground[]" on which a federal court may rely "for denying audience to a case on the merits." *Kaufman v. Kaye*, 466 F.3d 83, 88 n.1 (2d Cir. 2006) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)).

*Younger* abstention applies in three "exceptional" circumstances: "(1) where there is a pending state criminal prosecution; (2) where there is a pending civil enforcement proceeding; or (3) where there is a pending civil proceeding 'uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Gristina v. Merchan*, 131 F.4th 82, 86–87 (2d Cir. 2025) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013)). In determining whether *Younger* abstention applies, courts may also appropriately consider three additional factors identified in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982) that "further counsel in favor of abstention." *Cavanaugh*, 28 F.4th at 432. These factors include whether: "there is (1) an ongoing state judicial proceeding [that] (2) implicates important state interests and (3) provides an adequate opportunity to raise federal challenges." *Id.* (quoting *Sprint*, 571 U.S. at 81). These factors are not dispositive but, rather, are additional factors appropriately considered before invoking *Younger* abstention. *Id.* (citing *Sprint*, 571 U.S. at 81).

The Second Circuit has applied *Younger* abstention in the context of procedural due process challenges brought by plaintiffs challenging the actions of the Connecticut Superior Court and its judges in foreclosure proceedings. *See Toczek v. Alvord*, 841 F. App'x 263, 266 (2d Cir. 2021) (summary order). In *Toczek*, the Second Circuit held that the procedural due process challenge to the state court's foreclosure-related rulings fell into *Younger*'s third category, insofar as the

plaintiff sought vacatur of those rulings, which were "uniquely in furtherance of the state courts' ability to perform their judicial functions" and "implicate[d] a state's interest in enforcing the orders and judgments of its courts." *Id.* (quoting *Sprint*, 571 U.S. at 72–73). Similarly, here, Plaintiff requests that the Court enjoin all Defendants from enforcing the Superior Court's summary judgment ruling on liability made in the ongoing Foreclosure Action. But Plaintiff's request certainly implicates Connecticut's interest in enforcing the orders and judgments of its courts, as in *Toczek.* As the Hinshaw Culbertson Defendants point out, "[t]he Foreclosure Action is ongoing, and the TRO challenges the enforcement of the summary judgment that disposed of [Plaintiff's] counterclaims, the summary judgment order entered in favor of [Deutsche Bank] on liability only, and the trial court's orders entered under the ADA, by seeking a temporary restraining order and preliminary injunction, to bar enforcement of those orders and judgments." ECF No. 77 at 9 (citing ECF No. 1 ¶¶ 9, 113).

Plaintiff attempts to distinguish *Toczek* on its facts because *Toczek* "did not involve a Judicial Branch ADA qualification, operative protection from cognitively demanding case activity, opposing counsel's disability-and-candor attack, loss of counsel, prohibition against answering a one-sided dispositive presentation, or liability entered after Plaintiff was prohibited from opposing it." ECF No. 86 at 26–27. But "the facts of two cases are seldom identical." *Arkwright-Bos. Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 212 (2d Cir. 1985). *Toczek*'s reasoning teaches that Plaintiff's requested injunctive relief would interfere with the state court's ability to perform its judicial functions, insofar as she requests the federal court enjoin enforcement of the state court's denial of her motion to stay and ultimate summary judgment liability ruling (and thus enforcement of any resulting foreclosure).

Other courts concur that federal courts should abstain from granting requests to intervene in an ongoing civil state court foreclosure proceedings. *See El Bey v. Bellis*, No. 3:19-CV-336 (KAD), 2019 WL 2502929, at *4 (D. Conn. June 17, 2019) (collecting cases) (cited with approval by *Toczek*). And the *Middlesex* factors likewise weigh in favor of abstention here, as housing matters implicate important state interests, and Plaintiff can raise her federal challenges in the state forum. *See id.* at *5 (finding that the plaintiff could raise her federal challenges to the Superior Court's rulings in the state court proceedings or on appeal in the state courts); *F. S. v. J. S.*, 223 Conn. App. 763, 789–92, *cert. denied,* 350 Conn. 903 (2024) (evaluating defendant's claim that trial court violated the claimant's ADA rights by failing to allow him "time between hearing dates to rest" because he was "under stress"); *Deutsche Bank Nat'l Trust Co. as Trustee for Indymac Indx Mortg. Trust 2007-AR13, Mortg. Pass-Through Certificates, Series 2007-AR13 v. Criscuolo*, No. 19-CV-3760 (JRC), 2026 WL 850601, at *6 (E.D.N.Y. Mar. 27, 2026) (recognizing that foreclosure actions, which concern the disposition of real property, implicate important state interests and collecting cases).

Nor has the Court been provided sufficient facts to suggest any exceptions to *Younger* are applicable. A federal court may "intervene in a state proceeding upon a showing of 'bad faith, harassment or any other unusual circumstance that would call for equitable relief.'" *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) *(quoting Younger,* 401 U.S. at 54). A plaintiff invoking an exception to *Younger* abstention bears the burden of establishing that one of the exceptions applies. *Id.* Plaintiff has not advanced any arguments on this issue, and the Court can find no basis in the record for concluding that any exception applies. Indeed, even a state proceeding "that is legitimate in its purposes, but unconstitutional in its execution," even if the violation of constitutional rights "are egregious," "will not warrant the application of the bad

faith exception." *Id.* at 199. Although Plaintiff's complaint alleges that Deutsche Bank was attempting to enforce a mortgage it knew to be invalid, her convoluted allegations do not meet her burden of demonstrating that "the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." *Id.*

Plaintiff's complaint is plainly an effort to enlist a federal court to enjoin an ongoing state proceeding; as such, the Court must abstain under *Younger*, and Plaintiff cannot show a likelihood of success on the merits of her request for injunctive relief.[9]

*3. Anti-Injunction Act*

Finally, Plaintiff cannot demonstrate a likelihood of success on the merits of her request because the Court is prohibited from issuing the requested injunctive relief by the Anti-Injunction Act.

The "policy of preventing lower federal courts from interfering in state court proceedings in order to 'balance the tensions inherent' in a 'dual system of federal and state courts' was expressed by Congress as early as 1793, in the Anti–Injunction Act." *Diabo v. Delisle*, 500 F. Supp. 2d 159, 165 (N.D.N.Y. 2007) (quoting *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 145–146 (1988)). The current version of the Anti-Injunction Act ("AIA") states that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. ¶ 2283. "[T]he Second Circuit has expressly applied the Anti-Injunction Act to state foreclosure proceedings." *Ishutkina v. CitiMortgage, Inc.*, No. 3:19-

[9] In light of this holding, the Court need not reach the argument advanced by some Defendants that the Court should abstain under *O'Shea v. Littleton*, 414 U.S. 488 (1974), which extends the *Younger* abstention principle to cases where a state proceeding is not ongoing, but the federal court's intervention would result in an "ongoing federal audit" of state proceedings. *Id.* at 500. *See Disability Rights N.Y. v. N.Y.*, 916 F.3d 129, 134–36 (2d Cir. 2019) (collecting cases). The Court notes, however, that unlike *O'Shea* and *Disability Rights* (and the cases discussed therein), Plaintiff does not seek relief directed at general operations of the Superior Court; she seeks relief as to her own pending case only.

CV-373 (JCH), 2019 WL 13240429, at *1 (D. Conn. May 6, 2019), *aff'd,* 790 F. App'x 327 (2d Cir. 2020) (citing *Ungar v. Mandell*, 471 F.2d 1163, 1165 (2d Cir. 1972)).

To the extent Plaintiff requests orders that would effectively stay the Superior Court proceedings, such orders are barred by the Anti-Injunction Act. Although Plaintiff does not request a stay in so many words, she requests relief that would enjoin all Defendants from enforcing the Superior Court's summary judgment liability ruling, including through foreclosure, until the federal case is fully adjudicated. *See e.g.,* ECF No. 5 at 10 (seeking injunctive relief restraining "Defendants from obtaining, advancing, enforcing, recording, vesting, transferring, executing upon, or otherwise using any state-court order, judgment . . . or equivalent enforce step that relies on the exclusion-produced liability posture before this Court adjudicates the federal access injury"); ECF No. 121 at 1 ("Plaintiff requests this Court's protection and immediate entry of preliminary injunction sought in ECF 5 before Deutsche Bank uses the November 9 proceeding to advance the exclusion-produced liability orders towards strict foreclosure of Plaintiff's home."). And Plaintiff cannot escape application of the AIA by suggesting that she is attempting to enjoin only the parties to the Foreclosure Action, rather than the Superior Court itself, as "[t]he prohibition against enjoining state court proceedings applies equally to enjoining the state court itself, enjoining a party from proceeding with the litigation, or enjoining 'a necessary step in the state-court proceeding.'" *Diabo*, 500 F. Supp. 2d at 165 (quoting *Sperry Rand Corp. v. Rothlein*, 288 F.2d 245, 247–48 (2d Cir. 1961)).

Plaintiff does not contend that an injunction is "necessary in aid of" the federal court's jurisdiction or to "protect or effectuate its judgments." 28 U.S.C. § 2283. But she is correct that 42 U.S.C. § 1983, under which she brings her procedural due process claim against Judge Regan and Defendant Keane in their official capacities, is an act of Congress that qualifies as an exception

to the AIA. *See Mitchum v. Foster*, 407 U.S. 225, 242–43 (1972); ECF No. 1 at 141.[10] Yet Plaintiff's invocation of § 1983 cannot avoid the AIA, because she has not alleged a plausible § 1983 claim for injunctive relief. *See Ram v. Lal*, 906 F. Supp. 2d 59, 71 (E.D.N.Y. 2012) ("[W]hether this exception to the Anti–Injunction Act is applicable depends upon whether the Federal Plaintiffs have made out a cognizable Section 1983 claim.").

Section 1983 expressly provides that, "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." This immunity extends to both judges and to court staff, including clerks of court, who are carrying out the essential functions of the court. *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997). Here, there is no allegation that a declaratory decree was violated or that declaratory relief is unavailable. Thus, injunctive relief is unavailable against Judge Regan or Defendant Keane in their official capacities, and Plaintiff's procedural due process claim does not justify an exemption from the application of the AIA. *See Oliphant-Macher v. Macher,* No. 3:23-CV-1450 (SVN), 2024 WL 4335728, at *4 (D. Conn. Sept. 27, 2024) (applying judicial immunity and noting that declaratory relief is ordinarily available by appealing a judge's order); *Peters v. Noonan*, 871 F. Supp. 2d 218, 226–227 (W.D.N.Y. 2012) (applying judicial immunity to bar injunctive relief request against a judicial officer).

Plaintiff contends that § 1983 nonetheless provides a way around the AIA because it does not "bar prospective relief against Deutsche Bank, private counsel, and other nonjudicial participants." ECF No. 86 at 25. But Deutsche Bank, private counsel, and the other Defendants are not state actors, and Plaintiff has (appropriately) not named them in her § 1983 claim. "42

[10] Neither the ADA nor the Rehabilitation Act qualify as exceptions to the AIA. *See Moore v. Capital Realty Grp., Inc.*, No. 21-CV-1099 (LGF), 2023 WL 469915, at *4 (W.D.N.Y. July 24, 2023).

U.S.C. § 1983 applies to a private party's actions only if the actions are fairly attributable to the state." *Bernas v. Cablevision Sys. Corp.*, 215 F. App'x 64, 68 (2d Cir. 2007) (summary order); *Thompson v. Rizzitelli*, No. 3:10-CV-71 (JBA), 2011 WL 1215190, at *3 (D. Conn. Mar. 29, 2011) ("Section 1983 does not ordinarily reach the conduct of private actors."). Plaintiff provides no authority suggesting that simply alleging a § 1983 claim against a subset of Defendants authorizes invocation of the AIA exception to grant injunctive relief directed at *other* Defendants not named in the § 1983 claim. As "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy," *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970), the Court will not interpret Plaintiff's § 1983 claim as expanding to encompass non-state actors and allowing an injunction aimed at staying the state court proceedings that is directed at those non-state actors.[11]

In sum, the Court cannot conclude that Plaintiff has demonstrated a likelihood of success on the merits of her claims, which weighs strongly against issuance of preliminary injunctive relief.

B. Irreparable Harm

Plaintiff has also failed to demonstrate irreparable harm, which is the "single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono,* 175 F.3d 227, 234 (2d Cir.1999)).

To start, it is true that foreclosure on a property has, in some cases, been considered irreparable harm—but the cases holding as much have typically demonstrated some additional

[11] In light of its conclusion that Plaintiff's motion must be denied on other grounds, the Court does not reach the State Judicial Defendants' Eleventh Amendment or Article III arguments. It will decide those issues, which are also raised in the State Judicial Defendants' motion to dismiss, in due course.

harm beyond mere loss of the property interest itself. *See, e.g.*, *Mitchell v. Century 21 Rustic Realty*, 233 F. Supp. 2d 418, 431 (E.D.N.Y. 2002) (recognizing that "[l]oss of an interest in real property is generally considered irreparable harm," where the plaintiffs sought to enforce a sales contract so that a home would not be sold to another potential buyer), *aff'd,* 45 F. App'x 59 (2d Cir. 2002) (summary order); *Mehl v. LSF9 Master Participation Trust*, No. 25-CV-6226 (CS), 2026 WL 1893740, at *1 ("courts in this Circuit addressing similar claims have found that eviction from a primary residence does not constitute irreparable harm where the plaintiff has not shown they faced a real threat of homelessness").

Yet even if the prospect of Plaintiff's losing her home suffices, foreclosure is not necessarily imminent. *See Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) ("To establish irreparable harm, the movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.") (internal quotation marks and citation omitted). The Foreclosure Action remains pending, and no judgment of strict foreclosure has entered. Although there has been an order of summary judgment against Plaintiff on liability and the case is set for short calendar on November 9, 2026, Plaintiff retains the ability to appeal any adverse judgment to the Connecticut Appellate Court, and to seek a stay of execution of any foreclosure judgment pending resolution of the appeal.

Thus, the Court cannot find that Plaintiff has demonstrated irreparable harm.

C. <u>Public Interest</u>

No Defendant addresses the public interest factor in any detail. But because of the need to preserve comity between the federal and state systems—at which doctrines like *Rooker-Feldman*, *Younger* abstention, and the AIA are directed—the Court finds that the public interest would be disserved by issuance of the requested injunction, insofar as the injunction would interfere in an ongoing state litigation and usurp the role of the Connecticut trial and appellate courts in deciding

the property law dispute before them. Thus, issuance of the requested injunction does not serve the public interest.

D. Balance of Hardships

Finally, the Court cannot conclude that the balance of hardships tips in Plaintiff's favor, given that she can raise her disability-access related concerns in the state court proceedings—both at the trial and appellate levels—and that Plaintiff seeks an injunction that would bar Defendants from exercising legal rights to which they may otherwise be entitled, including taking actions to enforce the Superior Court's judgments, for the duration of the federal proceeding (which could be lengthy).

On balance, none of the factors weigh in favor of granting the preliminary injunctive relief Plaintiff requests. The Court thus declines to use its equitable powers in this circumstance, to the extent it is even empowered to do so.

E. Miscellaneous Requests

Plaintiff's motion also includes certain miscellaneous requests, including that the Court direct Defendants to preserve relevant records and order them to respect the confidentiality of any disability-related communications or medical records. The Court does not find that preliminary injunctive relief directed towards these issues is necessary, as Plaintiff may seek preservation of records from Defendants without Court intervention, and all parties must comply with rules and case law governing the confidentiality of sensitive documents, such as medical records. To the extent any document is publicly-filed that Plaintiff believes should be sealed, she is free to move to seal that document.

## IV. CONCLUSION

For the reasons described herein, Plaintiff's motion for a temporary restraining order and a preliminary injunction, ECF No. 5, is DENIED in full. Plaintiff's requests for expedited consideration at ECF Nos. 105 and 121 are DENIED as moot.

**SO ORDERED** at Hartford, Connecticut, this 9th day of November, 2026.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE

## APPENDIX A

Plaintiff's claims are:

(1) Title II of the Americans with Disabilities Act against Connecticut Judicial Branch;

(2) violation of Section 504 of the Rehabilitation Act against Connecticut Judicial Branch;

(3) ADA interference, retaliation, coercion and intimidation against Deutsche Bank, McCarter, Hinshaw, Brock & Scott, Swanson, Mahabamunuge, Milne, Fredericks, Brown, Brown Law LLC, Keane, and John Doe Defendants as applicable;

(4) denial of procedural due process and access to courts for prospective declaratory and injunctive relief against official-capacity defendants including Judge Regan and Keane, and against John Doe officials as applicable;

(5) declaratory and injunctive relief against all defendants as applicable;

(6) fraud, fraudulent concealment, and fraudulent foreclosure enforcement against Deutsche Bank, McCarter, Hinshaw, Brock & Scott, Swanson, Mahabamunuge, Milne, Fredericks, Knickerbocker, and John Doe defendants as applicable;

(7) fraud on the court / declaratory and equitable relief from use of fraud-tainted record against Deutsche Bank, McCarter, Hinshaw, Brock & Scott, Swanson, Mahabamunuge, Milne, Fredericks, Knickerbocker, Brown, Brown Law LLC, and John Doe defendants as applicable;

(8) Connecticut Unfair Trade Practices Act ("CUTPA") against Deutsche Bank, McCarter, Hinshaw, Brock & Scott, Swanson, Mahabamunuge, Milne, Fredericks, Knickerbocker, Brown, Brown Law LLC, and John Doe defendants as applicable;

(9) civil RICO against Deutsche Bank, McCarter & English LLP, Hinshaw & Culbertson LLP, Brock & Scott, PLLC, Adam M. Swanson, Bhanuka Y. Mahabamunuge, Geoffrey K. Milne, Aaron A. Fredericks, Jeffrey Marks Knickerbocker, and John Doe defendants as applicable;

(10) RICO conspiracy against Deutsche Bank, McCarter & English LLP, Hinshaw & Culbertson LLP, Brock & Scott, PLLC, Adam M. Swanson, Bhanuka Y. Mahabamunuge, Geoffrey K. Milne, Aaron A. Fredericks, Knickerbocker, and John Doe defendants as applicable;

(11) defamation/libel/false light and related reputational torts against Deutsche Bank, McCarter, Hinshaw, Swanson, Mahabamunuge, Milne, Fredericks, Brown, Brown Law LLC, and John Doe defendants as applicable;

(12) Invasion of privacy / public disclosure of private facts / unauthorized public docketing of ADA communications against Connecticut Judicial Branch, Keane, and John Doe defendants as applicable;

(13) process and civil conspiracy against Deutsche Bank, McCarter, Hinshaw, Brock & Scott, Swanson, Mahabamunuge, Milne, Fredericks, Knickerbocker, Brown, Brown Law LLC, and John Doe defendants as applicable;

(14) unjust enrichment, restitution, and disgorgement against Deutsche Bank, Brown, Brown Law LLC, and other defendants as applicable;

(15) legal malpractice / professional negligence against Brown, and Brown Law LLC;

(16) breach of fiduciary duty against Brown, and Brown Law LLC;

(17) breach of contract against Brown, and Brown Law LLC;

(18) breach of implied covenant of good faith and fair dealing against Brown, and Brown Law LLC;

(19) conversion / civil theft / wrongful retention of funds against Brown and Brown Law LLC;

(20) intentional infliction of emotional distress against Deutsche Bank, McCarter, Hinshaw, Swanson, Mahabamunuge, Milne, Fredericks, Brown, Brown Law LLC, and John Doe Defendants as applicable;

(21) negligent infliction of emotional distress against Deutsche Bank, McCarter, Hinshaw, Swanson, Mahabamunuge, Milne, Fredericks, Brown, Brown Law LLC, And John Doe Defendants as applicable;

(22) declaratory judgment--equitable recoupment and setoff against claimed enforcement rights against Deutsche Bank and "Mortgage-Chain Defendants" as applicable;

(23) declaratory judgment regarding enforceability of Deutsche Bank's claimed rights- 28 U.S.C. § 2201-2202 against Deutsche Bank and "Mortgage-Chain Defendants" as applicable;

(24) civil conspiracy / aiding and abetting against Deutsche Bank, McCarter, Hinshaw, Brock & Scott, Swanson, Mahabamunuge, Milne, Fredericks, Knickerbocker, Brown, Brown Law LLC, and John Doe Defendants as applicable;

(25) predatory lending / origination-side unfair and deceptive acts and practices under CUTPA, against Deutsche Bank "as Assignee with Notice," and John Doe originator/predecessor Defendants as applicable;

(26) quiet title — declaratory judgment as to title and release of void mortgage instrument against Deutsche Bank and "All Claiming Parties";

(27) tortious interference with prospective economic relations and contractual relations against Deutsche Bank, McCarter, Hinshaw, Swanson, Mahabamunuge, Milne, Fredericks, Brown, Brown Law LLC, and John Doe Defendants as applicable;

(28) elder financial exploitation and abuse against Deutsche Bank, McCarter, Hinshaw, Swanson, Mahabamunuge, Milne, Fredericks, Brown, Brown Law LLC, and John Doe Defendants as applicable;

(29) negligence and gross negligence — origination, acquisition, and servicing against Deutsche Bank, John Doe originator/predecessor Defendants as applicable;

(30) civil theft / statutory theft against Deutsche Bank;

(31) breach of the implied covenant of good faith and fair dealing against Deutsche Bank; and

(32) violation of the Equal Credit Opportunity Act, against Deutsche Bank and John Doe originator/predecessor Defendants as applicable.

*See* ECF No. 1 at 121–292.